# FIRST DISTRICT COURT OF APPEAL
# STATE OF FLORIDA

_____

No. 1D2024-1350
_____

KENNETH LAKATIS,

    Appellant,

    v.

CITRUS COUNTY SHERIFF'S
OFFICE/FLORIDA SHERIFF'S RISK
MANAGEMENT FUND (FSRMF),

    Appellees.

_____

On appeal from the Office of the Judges of Compensation Claims.
Brian J. Anthony, Judge.

Dates of Accident:  April 28, 2023, May 1, 2023, and May 15, 2023.

February 18, 2026

RAY, J.

Kenneth Lakatis, a longtime law enforcement officer, appeals a final order of the Judge of Compensation Claims denying his workers' compensation claim for disabling heart disease. Section 112.18 of the Florida Statutes, often referred to as the Heart-Lung statute, provides that when a qualifying officer becomes disabled by heart disease, the condition is presumed to have arisen out of the employment unless the employer/carrier (E/C) rebuts that presumption with competent evidence. Lakatis met every requirement to invoke the presumption. The remaining question

was whether the E/C proved that his coronary artery disease, and the heart attack that followed, resulted solely from non-work factors. On this record, the E/C did not make that showing. Because the Heart-Lung presumption demands more to overcome it, we set aside the order denying compensability and remand for further proceedings consistent with this opinion.

I

Lakatis has served with the Citrus County Sheriff's Office for fifteen years and works as a patrol sergeant supervising several deputies. His position requires rotating twelve-hour shifts, alternating every two months between day and night duty. When assigned to nights, he averages about six hours of sleep each day. His duties include supervising personnel, handling complaints and administrative tasks, and responding to high-risk calls—responsibilities that regularly expose him to stressful situations.

In late April 2023, while on duty and exercising on a treadmill in the sheriff's office gym, Lakatis experienced burning chest discomfort. The next day, again during his shift, he felt similar chest pain while lifting and unloading heavy metal poles used for traffic signs. Early the following morning, he awoke with the same burning pain and drove himself to the hospital. Cardiac testing revealed a non-ST-elevation myocardial infarction and diffuse multivessel coronary artery disease. He underwent triple-bypass surgery on May 1, 2023. Two weeks later, after discharge, he returned to the hospital with recurrent chest pain and underwent another catheterization that resulted in the placement of two stents. He remained off duty until June 26, 2023, when he returned to light duty, followed by a full-duty release a month later.

Lakatis filed petitions for benefits seeking compensability of his disabling heart disease under the Heart-Lung statute, authorization of a cardiologist, and payment of temporary total disability benefits, penalties, interest, costs, and attorney's fees. At the final hearing, the E/C stipulated that he met all prerequisites for the statutory presumption: he was a full-time law enforcement officer; his pre-employment physical revealed no evidence of heart disease; and he suffered from heart disease resulting in disability.

2

The only dispute was whether the E/C had rebutted the presumption that his disabling condition was work-related.

The parties offered competing medical testimony. The E/C's independent medical examiner (IME) attributed the coronary artery disease and resulting heart attack to non-occupational risk factors—hypertension, hyperlipidemia, pre-diabetes, obesity, family history, smoking, and heavy alcohol use—and opined that these factors "banded together" to cause the disease and the need for bypass surgery and stenting. Lakatis's IME agreed that those risk factors may have played some role but emphasized that medical science cannot identify which, if any, caused the coronary artery disease or the acute heart-attack event in this case.

Given this disagreement, the JCC appointed an expert medical advisor (EMA) under section 440.13(9), Florida Statutes. In his written report, the EMA opined that the "most likely cause" of the coronary artery disease was a constellation of non-occupational risk factors—hypertension, hyperlipidemia, smoking, obesity, and family history—and was "not related" to Lakatis's employment. He likewise wrote that the chest-pain episodes and heart-attack event were triggered by those risk factors and accelerated coronary artery disease, and were "not work related."

In his deposition, however, the EMA offered additional context. He explained that medical science cannot determine "the exact cause" of coronary artery disease in any individual and that the disease develops from both known and unknown influences. He identified seven contributors in Lakatis's case: an unknown factor, hypertension, hyperlipidemia, obesity, smoking, family history, and employment as a law enforcement officer. He testified that hypertension accounted for roughly 25 percent of the disease, and that Lakatis's employment "could have" brought on or exacerbated that hypertension. He further described law-enforcement work as a recognized risk factor because of long shifts, day-night reversals, and long periods of inactivity interrupted by sudden, stressful exertion that produces adrenaline surges and acutely elevates blood pressure and heart rate.

As for the trigger, the EMA testified that "we don't know, really, what a trigger is," but identified family history, smoking, elevated cholesterol, elevated blood pressure, and an unknown factor as contributors. On cross-examination, he confirmed that the written report reflected his ultimate opinions. On redirect, however, he also reiterated that employment as a law enforcement officer was a contributing cause of both the coronary artery disease and the acute heart-attack event, describing the occupational role as "a small percentage"—"not 0 percent," but "less than 51 percent."

The JCC accepted the EMA's written opinions as "clear and unequivocal" and "presumed to be correct" under section 440.13(9)(c). Yet the JCC concluded that there was "no occupational cause" of the disease or the heart-attack event, found that the E/C rebutted the Heart-Lung presumption both by competent evidence and by clear and convincing evidence, and denied all benefits. Lakatis moved for rehearing, arguing that the EMA's acknowledgment of occupational causation foreclosed rebuttal as a matter of law. The JCC denied rehearing, and this appeal followed.

II

Florida's Heart-Lung statute creates a rule of causation unique to qualifying law enforcement officers, firefighters, and correctional officers. Relevant here, it provides that when an officer becomes disabled by a "condition or impairment of health" caused by heart disease, that disabling impairment "shall be presumed to have been accidental and to have been suffered in the line of duty," unless the E/C establishes the contrary "by competent evidence." § 112.18(1)(a), Fla. Stat. Once the statutory prerequisites are met, the claimant bears no burden to prove occupational causation; the statute shifts the burden of persuasion to the employer. *See Punsky v. Clay Cnty. Sheriff's Off.*, 18 So. 3d 577, 583–84 (Fla. 1st DCA 2009) (explaining that the presumption is a true burden-shifting presumption, not a "bursting bubble").

Our decisions recognize that disability from heart disease may arise from two causal components: an underlying cardiac condition and a precipitating event that turns that condition into a disabling impairment. When disability follows that pattern, the employer's

4

rebuttal burden extends to both parts of the causal chain. Showing that the underlying disease is personal or congenital is not enough; the employer must also rule out an occupational cause of the trigger.

Take *Mitchell v. Miami-Dade County* ("*Mitchell II*") as an example. There, the claimant's congenital heart condition became disabling only when a separate event triggered an episode of supraventricular tachycardia. 186 So. 3d 65, 68 (Fla. 1st DCA 2016). As *Mitchell II* explains, a congenital defect, much like any preexisting condition, can be aggravated by an event in the course of employment. *Id.* And when disability arises from that combination, the E/C must rule out an occupational cause of both the underlying condition and the acute trigger. *Id.* We reaffirmed the same principle in *Gonzalez v. St. Lucie County Fire District*, holding that the JCC was required to make a distinct finding on whether the precipitating event had any possible occupational cause. 186 So. 3d 1106, 1109 (Fla. 1st DCA 2016).

In view of this two-part causal chain, the standard for rebuttal is demanding. To overcome the presumption, the E/C must establish that the disabling impairment was caused entirely by non-work factors. *See City of Jacksonville v. Ratliff*, 217 So. 3d 183, 192 (Fla. 1st DCA 2017). Evidence showing that non-occupational causes were substantial, predominant, or even overwhelmingly likely does not satisfy that burden. *Id.* As *Ratliff* explains, the presumption remains unless the employer proves that "the" or "all" possible causes of the underlying condition and the disabling event were non-occupational. *Id.*

III

Applying these principles to the record before us, the E/C did not present competent medical evidence excluding work as a cause of either the underlying coronary artery disease or the heart attack that rendered Lakatis disabled.

Start with the disease. The EMA, whose opinions the JCC described as "clear and unequivocal" and accepted as presumptively correct, testified that coronary artery disease develops from a mixture of known and unknown factors. In his written report, he opined that the "most likely cause" of the disease

5

in Lakatis's case was a combination of non-occupational risk factors. In his deposition, however, he identified seven contributors: an unknown factor, hypertension, hyperlipidemia, obesity, smoking, family history, and employment as a law enforcement officer. He further explained that work-related stressors and exertion accounted for a "small" but nonzero share of the process.

The E/C argues that the JCC was free to disregard this testimony as inconsistent, but the record shows otherwise. The JCC expressly credited the EMA's views and did not reject his acknowledgment of occupational causation; he simply treated the predominance of non-work factors as sufficient rebuttal. That approach conflicts with the Heart-Lung statute. The question is not whether non-work causes predominate, but whether the E/C disproved *any* occupational causation. Because the EMA placed employment within the causal chain, the presumption was not rebutted as to the underlying disease.

The same is true for the triggering event. The heart attack was preceded by two days of exertional chest pain at work—first during treadmill exercise and then while lifting heavy metal poles—and culminated in the acute symptoms that prompted Lakatis to seek emergency care. The EMA testified that medical science cannot identify with certainty the precise trigger of an ischemic event, that an "unknown" factor likely played a role, and that he could not attribute the trigger solely to non-occupational causes. He identified the same set of contributors, including employment, as potential contributors to the heart attack itself. The E/C's own IME similarly acknowledged that the initial chest-pain episode was precipitated by exertion on the treadmill during work.

Even so, the E/C contends that the diffuse nature of the disease precludes any occupational component. But the EMA did not definitively say that. He stated only that he believed non-occupational factors predominated, while at the same time acknowledging a small but nonzero occupational role in both the disease and the triggering event. And, as *Ratliff* illustrates, where the medical evidence cannot pinpoint the trigger and still leaves room for a work-related contribution, the employer cannot meet its

6

burden to show that all causes were non-occupational. 217 So. 3d at 192.

IV

Because the E/C did not carry its burden under the Heart-Lung statute to exclude occupational causation, the statutory presumption remains unrebutted. The JCC therefore erred in denying compensability. We set aside the final order and remand for entry of an order finding Lakatis's cardiac condition compensable under section 112.18(1) and for any further proceedings consistent with this opinion.

SET ASIDE and REMANDED.

ROBERTS and TREADWELL,[*] JJ., concur.

───────────────────────

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

───────────────────────

Megan E. Oliva of Bichler & Longo, PLLC, Maitland, for Appellant.

William H. Rogner of HR Law, P.A., Orlando, for Appellees.

───────────────

[*] Judge Treadwell was substituted for an original panel member in this proceeding after oral argument. He has reviewed the briefs, the record, and the recording of the oral argument.